# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TRANS TECHNOLOGIES COMPANY,<br><br>  Plaintiff,<br>  v.<br><br>HENDRICKSON USA L.L.C.; QUEST GLOBAL, INC.; QUEST GLOBAL LOGISTICS, INC.; GREAT DANE ATLANTA, INC.; GREAT DANE TRAILER SALES, INC.; AND GREAT DANE TRAILERS, INC.,<br><br>  Defendants. | CIVIL ACTION NO.<br>_____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AND FALSE ADVERTISING

This is an action for patent infringement and false advertising in which Plaintiff, Trans Technologies Company ("TransTech"), makes the following allegations against Defendants Hendrickson USA L.L.C. ("Hendrickson"); Quest Global, Inc. and Quest Global Logistics, Inc. (together "Quest"); Great Dane Atlanta, Inc., Great Dane Trailer Sales, Inc., and Great Dane Trailers, Inc. (sometimes together "Great Dane"):

1

## The Parties

1. TransTech is a small Delaware Corporation with its principal place of business located at H60 Sheffield Place, Cartersville, Georgia 30121.

2. TransTech invented, manufactures and sells automated systems (herein referred to as "TRAC") for, among other things, the automatic inflation and deflation of truck (*e.g.*, 18 wheelers) tires. This technology provides trucking companies with great savings and improved safety by having the truck tires properly inflated at all times. These savings include reduction in petroleum expenditures and reduction in wear and tear on the tires. Defendants' improper activities have caused a severely negative impact on TransTech's business, such that it now is running at a sporadic, minimal level.

3. Hendrickson claims to be the leading global manufacturer and supplier of suspensions, axle systems, and other equipment to the global commercial transportation industry. Hendrickson makes, uses, markets, offers to sell and sells TIREMAAX PRO automatic inflation and deflation systems to truck companies, distributors, and original equipment manufacturers ("OEMs"), including companies located in Georgia such as Quest and Great Dane. On information and belief, Hendrickson is a limited liability company with its

international headquarters in Chicago, Illinois and its principal place of business in the United States, with respect to the technology in question, in Canton, Ohio.

4. On information and belief, Quest is a Georgia corporation with corporate offices based in Kennesaw, Georgia. Quest is a trucking company with a fleet of approximately 260 tractors and 400 refrigerated trailers. Quest advertising material states that Quest runs 53-ft refrigerated trailers from Great Dane and Wabash National, and that these trailers are equipped with Hendrickson TIREMAAX PRO systems.

5. The Delaware corporate records reflect that in 1989, Great Dane Trailer Sales, Inc. and Great Dane Atlanta, Inc. merged into Great Dane Trailers, Inc. These records, however, do not reflect that Great Dane Trailers, Inc. is an active, surviving Company. Upon information and belief, one or more of these companies took orders from Quest for trailers equipped with Hendrickson TIREMAAX PRO systems, equipped or had equipped the trailers with the Hendrickson TIREMAAX PRO system, and delivered the trailers equipped with the TIREMAAX PRO system to Quest. Should there be additional currently unknown Great Dane related entities involved in this activity, TransTech promptly will seek to amend this Complaint to add such entities.

## Nature of the Action

6. This is a civil action for the infringement of United States Patent No. 7,669,465 B2 (" '465 Patent," attached hereto as Exhibit A) against each of the defendants under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

7. This also is a civil action against Hendrickson for false advertising under the Lanham Act, 15 U.S.C. § 1125 *et seq*.

## Jurisdiction and Venue

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, including 35 U.S.C. § 271 *et seq*., and the Lanham Act, 15 U.S.C. § 1125 *et seq*.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b). Upon information and belief, each defendant has transacted business in this District. On information and belief, each defendant has committed acts of patent infringement in this District. Upon information and belief, Hendrickson has committed acts of false advertising in this District.

10. Venue is proper in this division pursuant to Rule 3.1(B)(1)(a) of the Civil Local Rules of Practice for the United States District Court for the Northern

District of Georgia as, based on information and belief, one or more of the defendants resides in this division.

11.     On information and belief, each defendant is subject to this Court's specific personal jurisdiction pursuant to due process, based on their substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) at least a portion of the false advertising alleged herein against Hendrickson; and (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Georgia and in this judicial district.  On information and belief, at least Quest and at least one Great Dane entity are subject to this Court's general personal jurisdiction given their sufficiently continuous and systematic contacts in the state of Georgia and within this judicial district.

## The Patent-in-Suit, Marking and Infringement Thereof

12.     The '465 Patent issued on March 2, 2010. TransTech owns all right, title and interest in the '465 Patent, including all rights to sue and recover for any current or past infringement of the '465 Patent.

13.     TransTech marks and has marked all TRAC systems sold with either the '465 patent number (for systems sold after the '465 patent issuance) or as "patent pending" (for systems sold prior to the '465 patent issuance).

14.     TransTech alleges infringement by Hendrickson's TIREMAAX PRO system when it is made, offered for sale, sold or used.

15.     Publicly available technical documents, including text and diagrams, videos, and an inspection of a Hendrickson TIREMAAAX PRO kit show infringement of at least claim 1 the '465 Patent, though this action is not limited to infringement of claim 1. Regarding each of the limitations of Claim 1 of the '465 Patent, by way of example of the proof of infringement:

* The TIREMAAX PRO is a "<u>system for continuously maintaining air pressure in tires.</u>" One technical document states that the TIREMAAX PRO uses "trailer air tank supply to provide a constant regulated target pressure to air seals and hoses to inflate all tires." "The pressure is continuously and automatically held at target pressure for inflation." TIREMAAX PRO also "monitors and deflates the tire pressure as needed."

* The TIREMAAX PRO comprises a "<u>rotary air chamber secured to a hub cap.</u>" One technical document states that the "rotary union is incorporated in the hubcap assembly for simpler installation and service."

\*   The rotary air chamber of the TIREMAAX PRO "<u>includes a plurality of check valves.</u>" Exhibits B and C show the existence of two check valves, each in the air chamber.

\*   The check valves of the TIREMAAX PRO are "<u>configured to inject air into a corresponding tire when tire pressure drops below a first adjustable preset value.</u>" One technical document states that if "tires are low, air from the trailer tank will continue to inflate tires to the target pressure." This air flows through the check valves as displayed in Exhibits B and C.

\*   TIREMAAX PRO comprises a "<u>plurality of relief valves, each relief valve configured to release air from a corresponding tire when tire pressure rises above a second adjustable preset value.</u>" Exhibit D shows two relief valves. Each valve will release air from the corresponding tire when the tire pressure rises above a preset value in the valve. One technical document states that "TIREMAAX PRO includes a deflation pressure that is preset greater than the target pressure. Excess pressure above the deflation pressure is exhausted."

7

\*   The TIREMAAX PRO comprises "<u>an air shaft extending through the hub cap and into the rotary air chamber.</u>" Inspection and the diagrams in the technical documentation show that this element is met.

\*   The TIREMAAX PRO comprises "<u>an air line attached to the air shaft, so that the air line passes through an axle and injects air into the air shaft.</u>" The diagrams in the technical documentation show that this element is met. Exhibit E displays this element as well.

\*   The TIREMAAX PRO comprises "<u>ball bearings affixed between the air shaft and the hub cap, so that the rotary air chamber rotates with the wheel.</u>" Inspection confirms that such ball bearings are affixed between the air shaft and the hub cap, so that the rotary air chamber rotates with the wheel.

### Count I – Hendrickson's Infringement of the '465 Patent

16.   Paragraphs 1-15 are incorporated by reference as if fully restated herein. On information and belief, Hendrickson has directly infringed, and continues to directly infringe, one or more claims of the '465 Patent by making, offering for sale, selling or using the TIREMAAX PRO system.

17.     If, and to the extent, Hendrickson contends that the infringement in question is not literal, TransTech asserts that, at a minimum, said infringement occurs under the doctrine of equivalents.

18.     Hendrickson also has committed acts of indirect infringement by inducing OEMs, dealerships and truck companies, including ones located in this District, such as Quest and Great Dane, to purchase, install or have installed TIREMAAX PRO on trailers. The technical literature, diagrams and videos are examples of the means for this inducement. Hendrickson has listed the parent patent to '465 Patent on the face of one of its patents (*i.e.*, U.S. Patent No. 8,973,633). Upon information and belief, Hendrickson was, at all relevant times, and is presently aware of the '465 Patent and acted and acts to infringe the '465 Patent despite an objectively high likelihood that its actions constitute(d) infringement. Upon information and belief, this objectively high risk was and is known, as it was and is obvious and should have been known to Hendrickson. At a minimum, Hendrickson has been and is willfully blind that the acts complained of herein, including the induced acts, constitute infringement of the '465 Patent.

19.     TransTech has been and continues to be damaged by Hendrickson's direct and indirect infringement of the '465 Patent. As such, TransTech is entitled

to an award of money damages from Hendrickson. This includes, but is not limited to, lost profits and/or a reasonable royalty.

20. Hendrickson's infringement, for reasons including those stated above, has been and is willful, and TransTech is entitled to enhanced damages therefor.

21. This is an exceptional case against Hendrickson, and TransTech is entitled to an award of attorneys' fees under 35 U.S.C. § 285 therefor.

22. TransTech has suffered and is suffering irreparable harm as a result of Hendrickson's infringements, and seeks preliminary and permanent injunctive relief therefor.

## Count II - Hendrickson's False Advertising

23. Paragraphs 1-11 are incorporated by reference as if fully restated herein.

24. Hendrickson has and is advertising that its TIREMAAX PRO system is the first and only automated tire inflation/deflation system.

25. These statements are literally false in light of the existence of TRAC prior to the TIREMAAX PRO system as exemplified by the fact that TRAC is encompassed by the '465 Patent, the application for which was filed in 2006. Hendrickson's false statements, made in commercial advertisements, misrepresent the nature, characteristics, and/or qualities of Hendrickson's TIREMAAX PRO.

26. Upon information and belief, Hendrickson knew and knows these statements were and are literally false.

27. Hendrickson's statements have caused, continue to cause and are likely to cause actual confusion in potential customers of TransTech's TRAC.

28. TransTech has been and continues to be damaged by Hendrickson's false statements in the form of injury to TransTech's commercial reputation and lost sales. As such, TransTech is entitled to an award of money damages from Hendrickson. This includes, but is not limited to, lost profits and/or disgorgement of Hendrickson's profits associated with its sales of TIREMAAX PRO.

29. TransTech has suffered and is suffering irreparable harm as a result of Hendrickson's false statements, and seeks preliminary and permanent injunctive relief therefor.

## Count III – Quest's Infringement of the '465 Patent

30. Paragraphs 1-22 are incorporated by reference as if fully restated herein.

31. On information and belief, Quest has directly infringed, and continues to directly infringe, one or more claims of the '465 Patent by purchasing, using and operating trailers equipped with the TIREMAAX PRO devices.

32. If, and to the extent, Quest contends that the infringement in question is not literal, TransTech asserts that, at a minimum, said infringement occurs under the doctrine of equivalents.

33. TransTech has been and continues to be damaged by Quest's infringement of the '465 Patent. As such, TransTech is entitled to an award of money damages from Quest. This includes, but is not limited to, lost profits and/or a reasonable royalty.

34. TransTech has suffered and is suffering irreparable harm as a result of Quest's infringements, and seeks preliminary and permanent injunctive relief therefor.

### Count IV – Great Dane's Infringement of the '465 Patent

35. Paragraphs 1-22, 30-34 are incorporated by reference as if fully restated herein.

36. On information and belief, Great Dane has directly infringed, and continues to directly infringe, one or more claims of the '465 Patent by purchasing, offering for sale, selling or using TIREMAAX PRO systems, including but not limited to supplying trailers equipped with TIREMAAX PRO systems to trucking companies such as Quest.

37. If, and to the extent, Great Dane contends that the infringement in question is not literal, TransTech asserts that, at a minimum, said infringement occurs under the doctrine of equivalents.

38. TransTech has been and continues to be damaged by Great Dane's infringement of the '465 Patent. As such, TransTech is entitled to an award of money damages from Great Dane. This includes, but is not limited to, lost profits and/or a reasonable royalty.

39. TransTech also is entitled to enhanced damages from Great Dane because Great Dane's infringement was and is willful. In 2012, TransTech made a presentation to Great Dane's vice president of engineering and communicated that TRAC is the only patented automatic inflation/deflation technology. Great Dane acted and acts to infringe the '465 Patent despite an objectively high likelihood that its actions constitute(d) infringement. Upon information and belief, this objectively high risk was and is known, as it was and is obvious and should have been known to Great Dane since at least 2012. At a minimum, Great Dane has been and is willfully blind that the acts complained of herein constitute infringement of the '465 Patent.

40. This is an exceptional case against Great Dane, and TransTech is entitled to an award of attorneys' fees under 35 U.S.C. § 285 therefor.

41.     TransTech has suffered and is suffering irreparable harm as a result of Great Dane's infringements, and seeks preliminary and permanent injunctive relief therefor.

### Prayer for Relief

WHEREFORE, Plaintiff TransTech respectfully requests that this Court enter judgment against Defendants as follows:

a)     adjudging that the claims of the '465 Patent are valid;

b)     adjudging that each of the defendants directly infringed and infringes, literally, the '465 Patent, or alternatively under the doctrine of equivalents;

c)     adjudging that Hendrickson indirectly infringed and infringes, literally, the '465 Patent, or alternatively under the doctrine of equivalents;

d)     adjudging that Hendrickson knowingly has made and is making literally false statements in commerce regarding the TIREMAAX PRO system;

e)     awarding TransTech the damages to which it is entitled under 35 U.S.C. § 284, including but not limited to lost profits and/or reasonable royalty, for each of the defendant's past infringement and any continuing or future infringement up until the date the defendants are finally and permanently enjoined from further infringement, and ordering a full accounting of same;

  f) awarding against Hendrickson and Great Dane enhanced damages, up to and including trebling of TransTech's damages recoverable from Hendrickson and Great Dane pursuant to 35 U.S.C. § 284, for their willful infringement of the '465 Patent;

  g) declaring this to be an exceptional case, and awarding TransTech attorneys' fees against Hendrickson and Great Dane pursuant to 35 U.S.C. § 285;

  h) entering a preliminary and permanent injunction against each defendant from any future making, using, marketing, sales or offers for sale of TIREMAAX PRO or any similar infringing product, pursuant to the full breadth of injunctive relief permitted under Rule 65 of the Federal Rules of Civil Procedure;

  i) awarding TransTech, based on Hendrickson's knowing and willful false advertising, lost profits and/or disgorgement of Hendrickson's profits made in connection with its sale of the TIREMAAX PRO system, and such other relief as it may be entitled to under the Lanham Act;

  j) awarding TransTech pre-judgment and post-judgment interest on its damages; and

  k) awarding TransTech such other and further relief in law or equity that the Court deems just and proper.

## Demand for Jury Trial

TransTech hereby demands a trial by jury on all claims and issues so triable.

This 1st day of June, 2016.

            Respectfully submitted,

        By: /s/ John L. North
            John L. North
              Georgia Bar No. 545580
            Steven G. Hill
              Georgia Bar No. 354658
            Jennifer L. Calvert
              Georgia Bar No. 587191
            Vivek Ganti
              Georgia Bar No. 755019
            Sharad K. Bijanki
              Georgia Bar No. 467136

            **HILL, KERTSCHER & WHARTON, LLP**
            3350 Riverwood Parkway, Suite 800
            Atlanta, Georgia 30339
            Tel: (770) 953-0995
            Fax: (770) 953-1358
            E-mail:
              jln@hkw-law.com
              sgh@hkw-law.com
              jc@hkw-law.com
              vg@hkw-law.com
              sb@hkw-law.com

            *Attorneys for Plaintiff*